[No. 21482. Department Two. April 5, 1929.]

THOMAS H. KOLDERUP, *Respondent*, v. AMERICAN NITROGEN PRODUCTS COMPANY, *Appellant*.[1]

*Battle, Hulbert & Helsell,* and *Shank, Belt & Fairbrook,* for appellant.

*Wright, Froude, Allen & Hilen,* for respondent.

[1]Reported in 276 Pac. 298.

MAIN, J.—This action was brought to recover royalties for the use of a certain patented device in the realm of oxidation of nitrogen. The cause was tried to the court, without a jury, and resulted in findings of fact and conclusions of law sustaining a recovery. From the judgment entered in favor of the plaintiff for the sum of $11,400, the defendant appeals.

The facts are these: On or about June 26, 1912, at Christiania [Oslo], Norway, F. H. A. Wielgolaski, by written contract, sold to one B. Thomas, or such company as Thomas might organize, the exclusive right to use, in the United States of America and the Dominion of Canada, Wielgolaski's present and future inventions in the realm of oxidation of nitrogen. The contract was written in the Norwegian language, and the material part, as translated by Edwin J. Vickner, the head of the department of Scandinavian languages and literature in the University of Washington, is as follows:

"(1)  In addition to the cash purchase price, Mr. Thomas or his company will pay Mr. Wielgolaski as a royalty $3 once for all per kilowatt for each one of the factories which in the above mentioned countries exploits any of the patented inventions of Mr. Wielgolaski."

"(2)  The royalty in question will become payable in a measure as the energy is put to use in such a way that settlement is made between the parties to this contract at the expiration of each year."

By transfer and assignment, the appellant, the American Nitrogen Products Company, became the owner of the contract, with the right to use the patented device in the United States and Canada. During the year 1918, it completed the construction of a plant at La Grande, this state, which contained two banks of furnaces, known as banks A and B, and had a capacity of 2,279.6 kilowatts. Shortly after the con-

struction of the plant at La Grande, the appellant constructed a plant at Lake Buntzen, in Canada, which contained six furnaces. The Lake Buntzen plant was not a success, and the royalties thereon were not paid until after the plant had been assigned for the benefit of creditors and a settlement was then made for the royalties upon that plant. During the year 1925, improvements were made in banks A and B of the La Grande plant, which, as found by the trial court, increased the capacity thereof "400 kilowatts for each bank." During the same year, bank C was constructed at La Grande, with a capacity, as found by the trial court, of "1,000 kilowatts per furnace or 3,000 kilowatts for the entire bank." Wielgolaski died on the first day of March, 1927, at Oslo, Norway, and his widow, who was appointed administratrix of his estate, assigned the cause of action, which is here involved, to the respondent. No payments have been made upon the royalties for the increased capacity of banks A and B or the construction of bank C at La Grande. The plant at Lake Buntzen was dismantled, and certain parts of that plant were shipped to La Grande and were used in the construction of bank C.

The first question that will be considered relates to the proper construction of the portion of the contract above set out. The second paragraph covers the matter of when the payments shall be made as the energy is put to use. The first paragraph is the one which more particularly calls for construction. The appellant says that, having paid for the Lake Buntzen plant, it had the right to move the furnaces therefrom and install them as additions to the La Grande plant, without being chargeable with the royalty at the latter place. The respondent says that the particular plant is the unit upon which the royalty is computed, and that bank C, having been installed at La Grande,

is subject to the royalty to be there paid. It will be observed that paragraph (1) provides a royalty of "$3 once for all per kilowatt for each one of the factories." There are two or three other translations of the contract in the record, which vary somewhat in wording, but are not essentially different in meaning. Mr. Vickner testified that the translation of the contract, a portion of which is above set out, was a literal translation to the best of his ability, and that in the translation he had avoided any attempt at interpretation. We think that the translation of the contract as made by Mr. Vickner is the one that should control. It will be observed that it is there provided that the royalty shall be $3, once for all per kilowatt, for "each" one of the factories. This would make the particular factory the unit upon which the royalty is to be based. If the particular factory be the unit, then the appellant is required to pay the royalty upon bank C, even though there went into that bank certain parts of the Lake Buntzen plant.

The other question is the extent to which the capacity of banks A and B was increased and the capacity of bank C. The trial court, as already indicated, found banks A and B were each increased "400 kilowatts," and that bank C had a capacity of "3,000 kilowatts." The extent to which banks A and B were increased and the capacity of bank C present purely questions of fact. The evidence was directly in conflict. The appellant says that the trial court, in determining the capacity, based it upon the peak at which the furnaces could be operated, but we are unable to reach this conclusion from the evidence. The capacity of the furnaces, as found by the trial court, was within what the evidence shows was their ordinary capacity, and not what they could produce when stepped up to the highest possible capacity. After

454

giving consideration to all of the evidence, we think the finding of the trial court should be sustained.

The judgment will be affirmed.

MITCHELL, C. J., PARKER, FRENCH, and MILLARD, JJ., concur.